IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID B. BENNETT, Y67052,            )
                                     )
                        Plaintiff,   )
                                     )
vs.                                  )          Case No. 26-cv-13-DWD
                                     )
GLEN AUSTIN,                         )
NURSE CRISS,                         )
JEFFREY WEHKING,                     )
LATOYA HUGHES,                       )
S. WHEALON,                          )
                                     )
                        Defendants.  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff David B. Bennett, an individual who was detained at Centralia Correctional Center at the time he initiated this action, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for multiple medical conditions. The Complaint was dismissed for failure to state a claim and the Amended Complaint (Doc. 12) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009)*.

## The Amended Complaint

Plaintiff alleges that in February of 2025 he was notified that he tested positive for tuberculosis, and he was prescribed a two week course of antibiotics that did not mitigate his symptoms.  (Doc. 12 at 7).  He claims that he wrote an emergency grievance about ongoing symptoms, which Defendant Glen Austin (the Warden of Graham Correctional Center) denied emergency status on March 7, 2025.  (*Id.*).  On March 12, 2025, Plaintiff was transferred to Centralia where he continued to seek care.  He faults Austin for deeming his grievance a non-emergency with no relevant medical expertise.  (*Id.* at 7-8).

At Centralia Plaintiff received a second course of antibiotics from March 30, 2025, through April 12, 2025.  (Doc. 12 at 8).  While taking the antibiotics he saw Dr. Whealon and asked for bloodwork to be done, but Whealon declined and simply provided Tylenol for reported pain.  Plaintiff then filed an emergency grievance on April 20, 2025, which Defendant Warden Wehking deemed an emergency.  (Doc. 12 at 8).  Plaintiff continued to seek care by writing the governor's office on March 16, 2025, and by filing a second emergency grievance on June 6, 2025.  Wehking responded to the grievances and governor's office correspondence twice in June of 2025 indicating that care was ongoing.  (*Id.* at 8-9).  Plaintiff alleges that one of Wehking's responses contained inaccurate information from healthcare staff about a refused appointment.  (*Id.* at 9).  Plaintiff faults Defendant Hughes for ultimately deeming the grievances appropriately addressed by the prison.  (*Id.* at 10).

Meanwhile, on July 26, 2025, Plaintiff had a relapse of previous medical issues.  He alleges that on July 26, 2025, Defendant Nurse Criss saw him at the medical unit, took a culture, and gave him amoxicillin.  (Doc. 12 at 10).  A few days later Plaintiff went to the medical unit for gastric issues where he alleges he learned that Criss did not document their encounter and he was forced to return the medication from Criss.  Plaintiff faults Defendant Criss for failing to properly document their visit.  (*Id.* at 10-11).

Plaintiff filed an emergency grievance August 1, 2025, which Defendant Wehking deemed an emergency.  (Doc. 12 at 11).  He alleges he also transmitted a copy to the Administrative Review Board, but they returned the grievance as incomplete.  (*Id.*).

On September 17, 2025, Plaintiff was seen by an outside dermatologist, a biopsy was performed on his scalp, he received stitches, and he was to return for a follow-up visit in three months.  (Doc. 12 at 12).  Plaintiff alleges that he was not seen within five days of returning to the prison.  (*Id.*).  He complains that he requested the results of the biopsy twice in October of 2025, and he was seen by Defendant Whealon on October 29, 2025.  (*Id.*).  Dr. Whealon did not have the biopsy results at that time.  On November 10, 2025, Dr. Whealon saw Plaintiff for "liquid coming from [his] head" and he prescribed a medication.  (*Id.*).

On November 12, 2025, Plaintiff received the biopsy results which were inconclusive and recommended a follow-up.  (Doc. 12 at 13).  Plaintiff attempted to schedule his own follow-up, but the dermatology office said the prison would need to schedule the appointment.  Plaintiff alleges he submitted several requests and had verbal conversations about his desire for the follow-up.  (*Id.*).  He alleges that Dr. Whealon was

denying or delaying care. (*Id.*). Plaintiff submitted an emergency grievance on November 12, 2025, and Wehking deemed it an emergency. Plaintiff also sent correspondence to the Administrative Review Board and Governor's office. (Doc. 12 at 13-14). On December 26, 2025, Wehking responded that healthcare staff would ensure the follow-up dermatology visit was scheduled. (Doc. 12 at 14). Plaintiff ultimately had a follow-up visit on February 17, 2026, but he is dissatisfied because he did not get a re-biopsy at that appointment. (*Id.*).

Plaintiff faults Dr. Whealon both as medical director, and for the one-on-one care that he provided. (Doc. 12 at 14-15). He alleges Whealon and the medical staff failed to provide timely care or to follow specialist recommendations in a timely manner. (*Id.* at 15). Plaintiff alleges that there is a discrepancy between a grievance response that he received, which indicated Whealon suggested no new care, and medical records from May 12, 2025, which he claims show that Whealon prescribed daily doxycycline for six months. (*Id.*). Based on the discrepancy, he argues that Whealon failed to follow the course of care he personally prescribed. Plaintiff alleges that Whealon was informed of his medical issues on multiple occasions, but did not provide satisfactory care, which led to suffering and the loss of 45 percent of his hair. (*Id.* at 16).

Plaintiff faults Defendant Wehking for failing to oversee medical services, and for deeming grievances emergencies, but then not ensuring that the grievances got timely responses or that he got needed care. (Doc. 12 at 15-16). Likewise, Plaintiff faults Director Hughes for being notified of his issues via grievances and failing to investigate or intervene. (Doc. 12 at 17). He further alleges that Hughes did not adequately oversee

contracts for the provision of medical services.  (*Id.* at 17-18).  Plaintiff seeks monetary compensation.  (Doc. 12 at 19).

In support of the complaint, Plaintiff submitted grievance documentation, memorandums from healthcare staff and Wehking, and medical records.  On April 20, 2025, Plaintiff grieved "liquid substance coming from parts on [his] body."  (Doc. 12 at 27).   On May 7, 2025, Plaintiff was seen for a small red area on his chest that was open and draining.  (Doc. 12 at 80).  On May 12, 2025, Plaintiff's chart reflects that he was seen for cystic lesions or acne that had been open and draining, but that were not draining at the visit.  (Doc. 12 at 79).  The provider noted that "doxy" was tolerated well in the past, that they would continue to monitor, and if there were more lesions the plan was to "give daily doxy x6 mos."  (*Id.*).  On August 1, 2025, Plaintiff grieved a "liquid substance coming from the back of his head" on July 26, 2025, for which he alleges Nurse Criss provided antibiotics that were subsequently recalled.  (Doc. 12 at 42).  Plaintiff's medical chart indicates that on July 29, 2025, the liquid coming from his head had been resolved and Plaintiff was awaiting a dermatology appointment.  (Doc. 12 at 60).  Plaintiff was seen by an outside dermatologist for an issue on his scalp on September 17, 2025.  (Doc. 12 at 62-64).  A biopsy was performed, stiches were placed, and a follow-up was suggested.  (*Id.*).  Plaintiff's medical records also show he was seen on September 27, 2025, for small pinprick sized marks on his foot, and he was seen on October 9, 2025, for "liquid coming out of his head," but it was reported as healed and likely due to an ingrown hair.  (Doc. 12 at 67).  On October 17, 2025, it was noted that Plaintiff had been seen at a dermatologist and a referral was written for a follow-up in three months.  (Doc. 12 at 68).  On November

10, 2025, Plaintiff was seen for a small lesion behind his ear and a few other lesions that appeared to be healing. (Doc. 12 at 72). He was prescribed Bactrim. (*Id.*).

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

**Claim 1:**   **Eighth Amendment deliberate indifference claim against Defendant Glen Austin for denying Plaintiff's grievance emergency status;**

**Claim 2:**   **Eighth Amendment deliberate indifference claim against Nurse Criss for the treatment on July 26, 2025;**

**Claim 3:**   **Eighth Amendment deliberate indifference claim against Dr. Whealon for denying or delaying care;**

**Claim 4:**   **Eighth Amendment deliberate indifference claim against Defendants Wehking or Hughes for their handling of Plaintiff's grievances and correspondence related to care from April 2025-December of 2025.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an

objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

In Claim 1, Plaintiff faults Warden Austin for deeming a grievance a non-emergency.  He argues that Austin was not qualified to make that determination because Austin is not a medical professional.  The alleged mishandling of a grievance by a prison official who does not cause or participate in an underlying issue is not sufficient to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011).  Here, Plaintiff faults Austin for deeming a grievance a non-emergency, but that administrative decision does not amount to participation in an alleged underlying wrong.  Furthermore, deeming a grievance a non-emergency may impact the processing time, but it does not hinder the ability for prison officials to take input from medical professionals during the process, and thus Austin's decision was not an improper exercise of medical judgment.  Claim 1 will be dismissed.

In Claim 2, Plaintiff again faults Defendant Criss for a single encounter in July of 2025.  Specifically, Plaintiff reported to the medical unit where he alleges Criss took a culture and prescribed Amoxicillin.  He complains that Criss failed to adequately

document this encounter, so later other providers forced him to return the Amoxicillin. Plaintiff does not clearly describe the medical condition for which he saw Criss, so the Court cannot assess the seriousness of his medical condition. He also does not allege he suffered any discrete harm from Criss's conduct or from the later withdrawal of the antibiotics, he does not allege he ever followed up with Criss about the issue, and he does not allege he sought further care for whatever issue it was that led to the consultation with Criss. The single encounter with Criss, where Criss provided care, is not sufficient to establish deliberate indifference.

In Claim 3, Plaintiff faults Dr. Whealon for the direct care he provided and for his supervision of the medical unit. Dr. Whealon cannot be held liable solely because he supervised the medical unit because there is no *respondeat superior* liability under § 1983. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). However, he may be liable for his own actions if he exhibited deliberate indifference to a serious medical need. In the amended complaint, Plaintiff never squarely describes the medical condition for which he sought treatment. He says that at Graham he tested positive for tuberculosis and received antibiotics. Tuberculosis is a bacterial infection that affects the lungs.[1] Though Plaintiff alleges that he reported still having symptoms at Centralia in March of 2025, his subsequent grievances and medical records describe skin issues and not symptoms consistent with Tuberculosis. Assuming that the issue with Whealon actually centers on care for skin issues, the grievances and medical records that Plaintiff submitted

---

[1] *See* "What is Tuberculosis" by the Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/11301-tuberculosis, last accessed May 18, 2026.

demonstrate Whealon or others saw Plaintiff several times for skin lesions and adapted care as needed.  Though Plaintiff claims that Whealon delayed a follow-up appointment, the follow-up appointment ultimately transpired by mid-February of 2026, and Plaintiff does not describe any harm associated with the brief delay.  Plaintiff also faults Whealon for failing to follow his own prescribed course of action on May 12, 2025, but when Plaintiff was seen on May 12 he was noted as having no active lesions, and Dr. Whealon's plan was simply to continue monitoring and to advance to medication if needed. Notably, when Plaintiff was seen in November of 2025, he admits that Dr. Whealon gave him medication for an infection.  Plaintiff's own allegations fail to clearly identify a serious medical condition, and even assuming Plaintiff's skin issues were serious, the evidence he submitted shows that Whealon was generally responsive to his needs.  The facts do not form the basis for a plausible deliberate indifference claim against Whealon.

Finally, Plaintiff faults Defendants Wehking (Warden) and Hughes (the IDOC Director), for failing to address issues posed in his grievances and for failed oversight of the prison's medical contractors.  The allegations and attached evidence do not demonstrate a basis for liability against Hughes or Wehking.  Wehking timely responded to grievances and correspondence passed to him from the Governor's office.  In response to Wehking's actions, medical staff provided updates on care that demonstrated Plaintiff's issues were being attended to.  As administrators, Wehking and Hughes were entitled to defer to treating professionals on the appropriate course of care.  *See e.g.*, *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008) (administrators who promptly responded to an inmate's correspondence about deficient care, investigated, and then relied on the

judgment of treating providers, were not deliberately indifferent). To the extent that Plaintiff claims there were issues with contractual compliance by the medical contractors, or that they failed at times to provide care required by the Illinois Administrative Code, violations of prison rules does not equate to a constitutional claim. *See e.g.*, *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects plaintiffs from constitutional violations, not violations of state laws or departmental regulations or practices). On the facts pled, Plaintiff has not alleged a plausible claim against Hughes or Wehking.

Though plaintiffs are not required to provide extensive evidence or argument when filing their initial complaint, in this case Plaintiff's inclusion of significant medical records and other documentary evidence has proved to be self-defeating. A plaintiff can plead himself out of court by pleading facts or attaching documents to the complaint that show he has no claim. *See* *Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011). Here, Plaintiff's inclusion of significant medical records and grievance documentation demonstrates that his factual assertions simply do not support a finding of deliberate indifference. In fact, in some instances the records he attached show that his own factual narrative is plainly wrong. For example, Plaintiff alleged that Dr. Whealon prescribed medication on May 12, 2025, and then failed to follow his own treatment plan (Doc. 12 at 15), but the records contradict this assertion (Doc. 12 at 79). The record plainly states "continue to monitor, more lesions *will* give daily doxy x6mos." (*Id.*). Thus, Plaintiff is wrong to assert that on May 12, 2025, Dr. Whealon prescribed daily doxycycline. This is just one discrete example of the ways the records attached defeat a theory of deliberate

indifference.  The records evidence a recurring medical issue, but they also show Dr. Whealon progressed through different treatment modalities, and they do not suggest undue delay or a denial of care that caused serious harm.

There is one additional basis for dismissal of at least a portion of the allegations. An inmate is required to exhaust administrative remedies before filing suit, and filing a suit before exhausting all levels of review cannot be cured by an amended complaint. *Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020) (a premature lawsuit must be dismissed without prejudice and an amended complaint cannot cure an exhaustion defect against the same parties included in the earlier complaint).  The supplemental exhibits that Plaintiff submitted (Doc. 15) are grievance responses concerning his alleged medication issue with Defendant Criss, and his alleged delayed dermatology follow-up associated with Dr. Whealon.  The exhibits demonstrate that Plaintiff did not receive a ruling from the Administrative Review Board until May of 2026, about five months after he initiated this lawsuit, meaning that he sued first and exhausted later.  Thus, the allegations in the complaint about Defendant Criss and about the dermatology re-biopsy and follow-up associated with Dr. Whealon were filed prematurely before exhaustion was completed and must be dismissed.

Having reviewed Plaintiff's allegations twice the Court finds it unnecessary to invite further amendments. *See e.g. Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (amendment would be futile if plaintiff already had multiple chances to cure deficiencies); *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v.*

*Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). As such, this case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A. The Court does not view this dismissal as constituting a strike because some of the allegations are dismissed as prematurely filed before exhaustion, and this sort of dismissal does not qualify for a strike.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff argues that he needs the assistance of counsel because he had some challenges reading and spelling as a child and it is difficult to pursue his case while incarcerated. (Doc. 11 at 3-4). Plaintiff has some high school education. (Doc. 11 at 2). In a supplement to his Motion (Doc. 16), Plaintiff tendered a copy of a letter from Loevy and Loevy declining assistance with this case. When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff alleges that he attempted to contact

multiple attorneys who would not take his case, and he has now supplied proof of his efforts.

Additionally, the Court must consider Plaintiff's competence to represent himself, and the complexity of the case. Plaintiff's amended complaint is straightforward and easy to understand. It appears that he can draft a coherent pleading, he has supported it with relevant evidence, and he has filed a clear motion for recruitment of counsel. All these actions suggest that Plaintiff has sufficient communication skills to draft early pleadings without the assistance of counsel. *See e.g., Dorsey v. Varga,* 55 F.4th 1094, 1105-06 (7th Cir. 2022) (the pleading stage of the case and PLRA screening is not particularly complex). Therefore, Plaintiff's Motion for Recruitment of Counsel is **DENIED**.

### DISPOSITION

Plaintiff's Amended Complaint (Doc. 12) is **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915A, and in part for suing prematurely before completing the exhaustion process. The Clerk of Court shall enter judgment and **CLOSE** this case.

Plaintiff's Motion for Recruitment of Counsel (Doc. 11), and Motion to Supplement (Doc. 16) are **DENIED**. His Motion for Service of Process (Doc. 13) is **DENIED as MOOT**. His Motion to Supplement Exhibits (Doc. 15) is **GRANTED** and the supplemental grievance documents were reviewed.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger,* 547 F.3d

724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: July 17, 2026

DAVID W. DUGAN
United States District Judge